# UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF WISCONSIN
# MILWAUKEE DIVISION

| | |
|---|---|
| CAROL HOWARD, Individually and on Behalf of All Others Similarly Situated, | Case No.: 20-cv-907 |
| Plaintiff, | **CLASS ACTION COMPLAINT** |
| v. | |
| PHILLIPS & COHEN ASSOCIATES, LTD. and PORTFOLIO ASSET GROUP, | **Jury Trial Demanded** |
| Defendants. | |

## INTRODUCTION

1. This class action seeks redress for collection practices that violate the Fair Debt Collection Practices Act, 15 U.S.C. § 1692 *et seq.* (the "FDCPA").

## JURISDICTION AND VENUE

2. The court has jurisdiction to grant the relief sought by the Plaintiff pursuant to 15 U.S.C. § 1692k and 28 U.S.C. §§ 1331 and 1337. Venue in this District is proper in that Defendant directed its collection efforts into the District.

## PARTIES

3. Plaintiff Carol Howard is an individual who resides in the Eastern District of Wisconsin (Milwaukee County).

4. Plaintiff is a "consumer" as defined in the FDCPA, 15 U.S.C. § 1692a(3), in that Defendant sought to collect from her a debt allegedly incurred for personal, family, or household purposes.

5. Defendant Phillips & Cohen Associates, Ltd. ("Phillips") is a foreign corporation with its principal offices located at 1002 Justison Street, Wilmington, DE 19801.

6. Phillips is engaged in the business of a collection agency, using the mails and telephone to collect consumer debts originally owed to others.

7. Phillips is engaged in the business of collecting debts owed to others and incurred for personal, family or household purposes. Phillips is a debt collector as defined in 15 U.S.C. § 1692a.

8. Defendant Portfolio Asset Group ("PAG") is a foreign limited partnership with its principal place of business located at 1002 Justison Street, Wilmington, DE 19801.

9. PAG is engaged in the business of collecting debts owed to others and acquired after default, which were incurred for personal, family or household purposes.

10. The FDCPA defines a "debt" as "any obligation or alleged obligation of a consumer to pay money arising out of a transaction in which the money, property, insurance, or services which are the subject of the transaction are primarily for personal, family, or household purposes, whether or not such obligation has been reduced to judgment."

11. The FDCPA defines a "debt collector" as "any person who uses any instrumentality of interstate commerce or the mails in any business the principal purpose of which is the collection of any debts, *or* who regularly collects or attempts to collect, directly or indirectly, debts owed or due or asserted to be owed or due another." 15 U.S.C. § 1692a(6) (emphasis added); *see, e.g., Barbato v. Greystone Alliance, LLC*, 916 F.3d 260, 267-68 (3d Cir. 2019) ("As long as a business's raison d'être is obtaining payment on the debts that it acquires, it is a debt collector. Who actually obtains the payment or how they do so is of no moment."); *Tepper v. Amos Fin., LLC,* 898 F.3d 364, 371 (3d Cir. 2018) ("In sum, Amos may be one tough gazookus when it attempts to collect the defaulted debts it has purchased, but when its conduct crosses the lines prescribed by the FDCPA, it opens itself up to the Act's penalties."); *Kurtzman v. Nationstar Mortg. LLC*, No. 16 17236, 2017 U.S. App. LEXIS 19750, at *6-7 (11th Cir. Oct. 10, 2017); *McMahon v. LVNV*

*Funding, LLC*, 301 F. Supp. 3d 866, 883 (N.D. Ill. 2018); *Long v. Pendrick Capital Partners II, LLC*, No. 17-cv-1955, 2019 U.S. Dist. LEXIS 44459, at *39-40 (D. Md. Mar. 18, 2019).

12. PAG is a "debt collector" as defined in 15 U.S.C. § 1692a and Wis. Stat. § 427.103(3).

13. A company meeting the definition of a "debt collector" (here, PAG) is vicariously liable for the actions of a second company (here, Phillips & Cohen) collecting debts on its behalf. *Janetos v. Fulton Friedman & Gullace, LLP*, 825 F.3d 317, 325-26 (7th Cir. 2016) (assignees who are "debt collectors" are responsible for the actions of those collecting on their behalf) (*citing Pollice*, 225 F.3d at 404-05).

## FACTS

14. On or about May 13, 2020, Phillips mailed a debt collection letter to Plaintiff regarding an alleged debt, allegedly owed "Portfolio Asset Group." A copy of this letter is attached to this complaint as Exhibit A.

15. Upon information and belief, Exhibit A is a form letter, generated by computer, and with the information specific to Plaintiff inserted by computer.

16. Upon information and belief, Exhibit A is a form debt collection letter used by Phillips to attempt to collect alleged debts.

17. Exhibit A contains the following settlement offer:

3

> It is our hope to resolve your financial obligation owed to Portfolio Asset Group without continuing our collection efforts. To make repayment easier, please consider the below offer to resolve your debt for <u>less than the full amount:</u>
>
> Discounted Payoff Offer    Pay **60%** of the amount owed or **$438.56**
>
> **Interested in resolving your debt for less than the full balance?**
> To accept this offer, visit <u>Account-Serve.com</u> or call us at **866-321-2195** to set-up an approved payment plan. Once all payments are received and clear, you are released from your debt obligation and <u>collection activity ends.</u>
>
> If you are unable to pay in full or pay the reduced amount, please contact our office to discuss your situation and available solutions. Please notify us of your decision or payment status by **06/02/20\***.
>
> Sincerely,
> Phillips & Cohen Associates, Ltd.
>
> \*\* IMPORTANT CONSUMER INFORMATION \*\*
>
> \* Although this offer has an expiration date, other opportunities may be available at a later time.

18. The settlement offer in <u>Exhibit A</u> falsely states or implies that the settlement offer is valid only if accepted by June 2, 2020.

19. Upon information and belief, Phillips had authority from Portfolio Asset Group to settle consumers' accounts for 60% of the amount owed, or less, at any time.

20. Upon information and belief, Portfolio Asset Group is related by common ownership and control with Phillips.

21. Portfolio Asset Group is a fictitious or trade name for PCA Acquisitions V, LLC, a foreign corporation with its principal offices located at the same address as Philips – 1002 Justison Street, Wilmington, DE 19801.Statements such as a settlement offer is a "limited time offer," or that the offer expires on a specific date, or that payments must be received by that date, are false and misleading because the same offer is, upon information and belief, available at any time.

22. Such false statements are material false statements, as they impart in the unsophisticated consumer, a false belief that he or she must hurry to take Phillips of a limited-time opportunity, when in reality, there is no such time limit. This violation is especially egregious

4

Case 2:20-cv-00907-LA    Filed 06/16/20    Page 4 of 13    Document 1

when the holding entity and the debt collector are related entities, as both entities know that the offer is not time-limited.

23. The Seventh Circuit has established "safe harbor" language regarding settlement offers in collection letters:

> As in previous cases in which we have created safe-harbor language for use in cases under the Fair Debt Collection Practices Act, we think the present concern can be adequately addressed yet the unsophisticated consumer still be protected against receiving a false impression of his options by the debt collector's including with the offer the following language: "We are not obligated to renew this offer." The word "obligated" is strong and even the unsophisticated consumer will realize that there is a renewal possibility but that it is not assured.

*Evory v. RJM Acquisitions Funding L.L.C.*, 505 F.3d 769, 775-76 (7th Cir. 2007).

24. Phillips did not use the safe harbor language in Exhibit A.

25. Exhibit A did not use the word "strong" word "obligated." Instead, Exhibit A stated that "other opportunities may be available at a later time." Whereas a statement that the debt collector is "not obligated to renew" an offer implies to the consumer that the debt collector is likely to offer settlement on the same terms, an unsophisticated consumer would understand the "other opportunities" statement in Exhibit A to mean that the debt collector does not intend to offer settlement on the same terms in the future.

26. Plaintiff was confused by Exhibit A.

27. The unsophisticated consumer would be confused by Exhibit A.

28. Plaintiff had to spend time and money investigating Exhibit A and the consequences of any potential responses to Exhibit A.

5

29. Plaintiff had to take time to obtain and meet with counsel, including travel to counsel's office by car and its related expenses (including but not limited to the cost of gasoline and mileage), to advise Plaintiff on the consequences of Exhibit A.

30. Additionally, Exhibit A states: "This collection agency is exempt from licensing by the State of Wisconsin Department of Financial Institutions, www.wdfi.org"

31. The above language is a representation that Phillips is exempt from the requirement to maintain a Wisconsin Collection Agency License, pursuant to Wis. Stat. § 218.04 and Wis. Admin. Code § DFI-Bkg. 74.

32. An unsophisticated consumer would understand the representation in Exhibit A that Phillips is a collection agency that is "exempt from licensing by the Division of Banking in the Wisconsin Department of Financial Institutions" to mean that the Wisconsin Department of Financial Institutions has found that Phillips would ordinarily be subject to licensing requirements but has granted Phillips a specific exemption because Phillips has satisfied a set of requirements.

33. Wisconsin law requires a debt collector who collects debts in Wisconsin to be licensed unless the debt collector is a "nonresident of this state," and "if that [debt collector] conducts collection business with state residents solely by means of interstate telecommunications or interstate mail." Wis. Stat. § 218.04(2). The statute reads:

> **Wis. Stat. § 218.04(2)  Licenses required.**
> (a) Except as provided in par. (b), a person may not operate as a collection agency or as a collector or solicitor in this state without first having obtained a license as required by this section.
>
> (b) A nonresident of this state is not required to obtain a collection agency license if that person conducts collection business with state residents solely by means of interstate telecommunications or interstate mail.

6

34. Phillips's statement that it is exempt from licensing is false and misleading to the unsophisticated consumer because Phillips is not actually exempt from licensing in Wisconsin.

35. A false statement about a debt collector's licensing status is a material false statement. *See Radaj v. ARS Nat. Services, Inc.*, No. 05 C 773, 2006 U.S. Dist. LEXIS 68883 at *10; 2006 WL 2620394 at *3 (E.D. Wis. Sep. 12, 2006); *Seeger v. Aid Assocs.*, No. 05-cv-944-AEG; 2007 U.S. Dist. LEXIS 22824 at *7, 2007 WL 1029528 (E.D. Wis. Mar. 29, 2007) (misrepresentation of licensing "is precisely the kind of misrepresentation that Congress sought to prohibit when it passed the FDCPA."); *Czerwinski v. Risk Mgmt. Alternatives Int'l Corp. Can.*, No. 05-cv-945-LA, 2006 U.S. Dist. LEXIS 19113 at *3-4, 2006 WL 897768 (E.D. Wis. Apr. 4, 2006).

36. Moreover, Phillips's statement that it is exempt from licensing when it is not exempt is also a material false statement because DFI (through the Division of Banking) regulates licensed debt collectors. Wis. Admin. Code § DFI-Bkg. Ch. 74.

37. Phillips's shirking of the licensing requirement deprives consumers of a governmental body authorized to regulate Phillips's activities in Wisconsin, and further gives Phillips the ability to ignore DFI regulations that apply to its competitors.

38. Licensed collection agencies are required to maintain an active office in Wisconsin with regular business hours. Wis. Stat. 218.04(4)(a); Wis. Admin. Code § DFI-Bkg 74.04(2) and may be required to post a bond "in such sum as the division may deem reasonably necessary to safeguard the interests of the public." Wis. Stat. 218.04(3)(d).

39. DFI also regulates debt collectors' interactions with consumers beyond the protections contained in the FDCPA and the WCA. For example, licensed collection agencies are

prohibited from collecting most incidental fees and the debt collector's out-of-pocket costs. Wis. Admin. Code § DFI-Bkg 74.11(2).

40.    The FDCPA creates substantive rights for consumers; violations cause injury to consumers, and such injuries are concrete and particularized. *Pogorzelski v. Patenaude & Felix APC*, No. 16-C-1330, 2017 U.S. Dist. LEXIS 89678 *9 (E.D. Wis. June 12, 2017) ("A plaintiff who receives misinformation from a debt collector has suffered the type of injury the FDCPA was intended to protect against."); *Spuhler v. State Collection Servs.*, No. 16-CV-1149, 2017 U.S. Dist. LEXIS 177631 (E.D. Wis. Oct. 26, 2017) ("As in Pogorzelski, the Spuhlers' allegations that the debt collection letters sent by State Collection contained false representations of the character, amount, or legal status of a debt in violation of their rights under the FDCPA sufficiently pleads a concrete injury-in-fact for purposes of standing."); *Bock v. Pressler & Pressler, LLP*, No. 11-7593, 2017 U.S. Dist. LEXIS 81058 *21 (D.N.J. May 25, 2017) ("through [s]ection 1692e of the FDCPA, Congress established 'an enforceable right to truthful information concerning' debt collection practices, a decision that 'was undoubtedly influenced by congressional awareness that the intentional provision of misinformation' related to such practices, 'contribute[s] to the number of personal bankruptcies, to marital instability, to the loss of jobs, and to invasions of individual privacy,"); *Quinn v. Specialized Loan Servicing, LLC*, No. 16 C 2021, 2016 U.S. Dist. LEXIS 107299 *8-13 (N.D. Ill. Aug. 11, 2016) (rejecting challenge to Plaintiff's standing based upon alleged FDCPA statutory violation); *Lane v. Bayview Loan Servicing, LLC*, No. 15 C 10446, 2016 U.S. Dist. LEXIS 89258 *9-10 (N.D. Ill. July 11, 2016) ("When a federal statute is violated, and especially when Congress has created a cause of action for its violation, by definition Congress has created a legally protected interest that it deems important enough for a lawsuit.");; *see also Mogg v. Jacobs*, No. 15-CV-1142-JPG-DGW, 2016 U.S. Dist. LEXIS 33229, 2016 WL 1029396,

8

at *5 (S.D. Ill. Mar. 15, 2016) ("Congress does have the power to enact statutes creating legal rights, the invasion of which creates standing, even though no injury would exist without the statute," (quoting *Sterk v. Redbox Automated Retail, LLC*, 770 F.3d 618, 623 (7th Cir. 2014)). For this reason, and to encourage consumers to bring FDCPA actions, Congress authorized an award of statutory damages for violations. 15 U.S.C. § 1692k(a).

41. Moreover, Congress has explicitly described the FDCPA as regulating "abusive practices" in debt collection. 15 U.S.C. §§ 1692(a) – 1692(e). Any person who receives a debt collection letter containing a violation of the FDCPA is a victim of abusive practices. *See* 15 U.S.C. §§ 1692(e) ("It is the purpose of this subchapter to eliminate abusive debt collection practices by debt collectors, to insure that those debt collectors who refrain from using abusive debt collection practices are not competitively disPhillipsd, and to promote consistent State action to protect consumers against debt collection abuses").

42. Plaintiffs who allege that debt collectors engaged in misrepresentations in their dunning letters have standing, as such misrepresentations risk injury to interests expressly protected by Congress in the FDCPA. *See Degroot v. Client Servs.*, 2020 U.S. Dist. LEXIS 6677 (E.D. Wis. Jan. 15, 2020) ("[A]n informational injury can be concrete when the plaintiff is entitled to receive and review substantive information."); *Oloko v. Receivable Recovery Servs.*, 2019 U.S. Dist. LEXIS 140164 (N.D. Ill. Aug. 19, 2019); *Untershine v. Encore Receivable Mgmt.*, No. 18-CV-1484, 2019 U.S. Dist. LEXIS 134377 *8-9 (E.D. Wis. Aug. 9, 2019) ("Protecting consumers from misinformation is one of the 'concrete interest[s] that Congress sought to protect,' under the FDCPA. If a consumer is misinformed, rather than merely uninformed, the risk of harm is greater.") (internal citations omitted); *Richardson v. Diversified Consultants*, No. 17-cv-4047, 2019 U.S. Dist. LEXIS 118786 *10-11 (N.D. Ill. July 17, 2019) ("the receipt of a communication

misrepresenting the character of the debt (here, the amount owed) is the kind of injury that Congress sought to prevent through the FDCPA. 'Such an injury falls squarely within the ambit of what Congress gave consumers in the FDCPA: 'a legally protected interest in certain information about debts,' with 'deprivation of information about one's debt (in a communication directed to the plaintiff consumer) a cognizable injury.'" (internal citations omitted); *see also Pierre v. Midland Credit Mgmt., Inc.*, 2017 WL 1427070, at *4 (N.D. Ill. Apr. 21, 2017); *Saenz v. Buckeye Check Cashing of Illinois*, 2016 WL 5080747, at *1-2 (N.D. Ill. Sept. 20, 2016); *Bernal v. NRA Grp., LLC*, 318 F.R.D. 64, 72 (N.D. Ill. 2016) (holding that Plaintiff had standing to challenge misleading communication sent to him because the communication violated his "right to be free from such misleading communications"). Such misrepresentations may cause consumers to make incorrect decisions about their finances or make payments to incorrect parties.

43. 15 U.S.C. § 1692e generally prohibits "any false, deceptive, or misleading representation or means in connection with the collection of any debt."

44. 15 U.S.C. § 1692e(1) specifically prohibits the false representation that "the debt collector is vouched for, bonded by, or affiliated with the United States or any State, including the use of any badge, uniform, or facsimile thereof."

45. 15 U.S.C. § 1692e(9) specifically prohibits "the use or distribution of any written communication which simulates or is falsely represented to be a document authorized, issued, or approved by any court, official, or agency of the United States or any State, or which creates a false impression as to its source, authorization, or approval."

46. 15 U.S.C. § 1692e(10) specifically prohibits the "use of any false representation or deceptive means to collect or attempt to collect any debt."

47. 15 U.S.C. § 1692f generally prohibits "unfair or unconscionable means to collect or attempt to collect any debt."

## COUNT I – FDCPA

48. Plaintiff incorporates by reference as if fully set forth herein the allegations contained in the preceding paragraphs of this Complaint.

49. Exhibit A includes false statements to the effect that the settlement offer is for a limited time only.

50. Upon information and belief, the creditor and/or Phillips would settle Plaintiff's and class members' debts at the offered discount and likely for less at any time, regardless of the supposed deadline.

51. Defendant violated 15 U.S.C. §§ 1692e, 1692e(10) and 1692f.

## COUNT II – FDCPA

52. Plaintiff incorporates by reference as if fully set forth herein the allegations contained in the preceding paragraphs of this Complaint.

53. Exhibit A falsely states that Phillips is exempt from licensing by the Wisconsin DFI, when Phillips did not actually hold a Wisconsin Collection Agency License.

54. Phillips violated 15 U.S.C. § 1692e, 1692e(1), 1692e(9), and 1692e(10).

## CLASS ALLEGATIONS

55. Plaintiff brings this action on behalf of a class consisting of (a) all natural persons in the State of Wisconsin (b) who were sent an initial collection letter in the form represented by Exhibit A to the complaint in this action, (c) seeking to collect a debt for personal, family or household purposes, (d) between June , 2020, and June , 2020, inclusive, (e) that was not returned by the postal service.

56. The class is so numerous that joinder is impracticable. Upon information and belief, there are more than 50 members of the Class.

57. There are questions of law and fact common to the members of the class, which common questions predominate over any questions that affect only individual class members. The predominant common question is whether the Defendant complied with 15 U.S.C. §§ 1692e, 1692e(10), and 1692f, and whether Defendant complied with 47 U.S.C. § 227(b)(1)(A)(iii).

58. Plaintiff's claims are typical of the claims of the class members. All are based on the same factual and legal theories.

59. Plaintiff will fairly and adequately represent the interests of the class members. Plaintiff has retained counsel experienced in consumer credit and debt collection abuse cases.

60. A class action is superior to other alternative methods of adjudicating this dispute. Individual cases are not economically feasible.

## JURY DEMAND

61. Plaintiff hereby demands a trial by jury.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff requests that the Court enter judgment in favor of Plaintiff and the Class and against Defendant for:

(a) actual damages;

(b) statutory damages;

(c) attorneys' fees, litigation expenses and costs of suit; and

(d) such other or further relief as the Court deems proper.

Dated: June 16, 2020

**ADEMI & O'REILLY, LLP**

By: s/ John D. Blythin
John D. Blythin (SBN 1046105)
Mark A. Eldridge (SBN 1089944)
Jesse Fruchter (SBN 1097673)
Ben J. Slatky (SBN 1106892)
3620 East Layton Avenue
Cudahy, WI 53110
(414) 482-8000
(414) 482-8001 (fax)
jblythin@ademilaw.com
meldridge@ademilaw.com
jfruchter@ademilaw.com
bslatky@ademilaw.com